UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ONEBEACON AMERICA<br>INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:12-cv-00375-JAW |
| | ) | |
| JOHNNY'S SELECTED SEEDS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING JUDGMENT ON THE STIPULATED RECORD**

In this declaratory judgment action under 28 U.S.C. § 2201, OneBeacon America Insurance Company and Massachusetts Bay Insurance Company (Insurers) seek to establish that they do not have a duty to defend Johnny's Selected Seeds, Inc. (Johnny's) against a lawsuit currently underway in Ontario, Canada. In the underlying suit, the plaintiffs and cross-claimants allege that Johnny's provided them with seeds contaminated with molds and fungi. The parties have moved for judgment on a stipulated record, and Johnny's has also moved for an award of attorney's fees. Because the Complaint and cross-claims in the underlying lawsuit show that there is a potential that either OneBeacon or Massachusetts Bay will ultimately have a duty to indemnify Johnny's, the Court declares that both insurance companies have a duty to defend. This duty was clear under Maine law from the outset of this declaratory judgment action, so the Court awards attorney's fees to Johnny's.

# I.    LEGAL STANDARDS

## A.    Jurisdiction and Remedy

The Insurers and Johnny's are "citizens" of different states, and the parties have stipulated that the amount in controversy exceeds $75,000.00.  *See Stip. R. Attach. 2 Statement of Claim*, at 003 (ECF No. 22) (Mar. 22, 2012) (*Chatham-Kent Complaint*) (claiming $2,000,000.00 plus special damages).  Therefore, the Court has diversity jurisdiction under 28 U.S.C. § 1332.  Title 28 U.S.C. § 2201 authorizes the Court to issue a judgment declaring the legal rights and duties of the parties.

## B.    Judgment on a Stipulated Record

The parties submitted this case for judgment on a stipulated record.  *Pl.'s Mot.*; *Def.'s Mot.*  "[T]o stipulate a record for decision allows the judge to decide any significant issues of material fact that he discovers . . . ." *Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urban Dev.*, 768 F.2d 5, 11-12 (1st Cir. 1985); *see also Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry.*, 210 F.3d 18, 31 (1st Cir. 2000).  In rendering judgment, the Court must make findings of fact on any disputed factual issues.  FED. R. CIV. P. 52(a).  The parties waived any objections to foundation or authenticity of documents in the stipulated record.  *Stip. R.* at 1 (ECF No. 22) (*Stip.*).

## II.   FACTS

### A.   Procedural Posture

OneBeacon America and Massachusetts Bay[1] filed their Complaint for Declaratory Judgment (ECF No. 1) on December 11, 2012.  Johnny's answered on February 13, 2013.  *Answer* (ECF No. 7).  The Insurers filed their Motion for Judgment on a Stipulated Record on September 27, 2013, *Mot. for J. on Stip. Record* (ECF No. 21) (*Pls.' Mot.*), and submitted with it a Stipulated Record.  *Stip.*  Johnny's filed a cross-motion for judgment on the record on October 16, 2013.  *Def.'s Mot. for J. on a Stipulated R.* (ECF No. 23) (*Def.'s Mot.*).  The Insurers opposed Johnny's motion on November 6, 2013, *Pls.' Opp'n to Def.'s Mot. for J. on a Stip. R.* (ECF No. 27) (*Pls.' Opp'n*), and Johnny's replied on November 26, 2013.  *Def.'s Reply to Pls.' Opp'n to Def.'s Mot. For J. on a Stip. R.* (ECF No. 28) (*Def.'s Reply*).

### B.   Historical Facts

#### 1.   The Complaint and Cross-Claims in the Underlying Suit

In March 2012, Chatham-Kent Organic Epi-Centre, Inc. (Chatham-Kent) commenced a civil action against Johnny's Selected Seeds, Tri L Natural Organic Farms, Inc. (Tri L), Natural Organic Farms, Inc., and Larry Pocock in the Superior Court in Ontario, Canada.  *Chatham-Kent Compl.* at 001.  Chatham-Kent alleges that it owned and operated a farm in Ontario.  *Id.* ¶ 2.  It alleges that Tri L, Natural Organic Farms, and Larry Pocock acted as distributers of organic seeds sold by Johnny's and in April 2010 Chatham-Kent purchased seeds from those distributors

---

[1]     In further analysis, the Court refers to these two parties as "the Insurers" except where necessary to distinguish one from the other.

that they had purchased from Johnny's. *Id.* ¶¶ 3-5. The Complaint alleges that the seeds were "contaminated," that they "contaminated" Chatham-Kent's fields, and that the contamination diminished the value of the farmlands because they could no longer be used for certified organic agriculture. *Id.* ¶ 6. The Complaint also alleges "[s]pecial damages in an amount to be proven at trial." *Id.* ¶ 1(b).

On October 22, 2012, Tri L Natural and Larry Pocock (Tri L Defendants) filed an answer to Chatham-Kent's Complaint and a cross-claim against Johnny's. *Stip.* Attach. 3 *Am. Statement of Defence and Crosscl. of the Defs.* (ECF No. 22) (Oct. 22, 2012) (*Cross-Claim*). This pleading alleges additional details not in the Chatham-Kent Complaint. Tri L, according to the Cross-Claim, leased land from Chatham-Kent to farm organic vegetables. *Id.* ¶ 11. In particular, Tri L had two contracts with SunOpta Fresh Division, a "leading national distributor[] of organic produce," to grow, respectively, "organic potatoes, carrots and broccoli" and "carrots, salads, green onion, spinach, bok choy, bunched beets, leaf lettuces, leaks and radishes." *Id.* Tri L alleges that "[t]he corn to be grown under the [lease] . . . was intended to be supplied" to the national distributors "with whom Tri L had supply contracts." *Id.* Chatham-Kent was to serve as "Tri L's grower." *Id.* ¶ 10. In March and April of 2010, Tri L purchased "Frisky seed" from Johnny's "for the purpose of fulfilling the [national distributor] [c]ontracts." *Id.* ¶ 19. Although it refers to the seed as "Frisky," the Cross-Claim does not identify the species of seed that Tri L purchased. *See id.* ¶¶ 19-21.

The summer 2010 crop did not turn out well.  On August 16, 2010, a principal of Chatham-Kent "emailed Mr. Pocock photos of spoiled corn crops located on the Lease Property."  *Id.* ¶ 23.  On August 24, Mr. Pocock emailed a sales representative of Johnny's with whom he had been dealing, notifying Johnny's of the rotten crops. *Id.* ¶ 25.  Mr. Pocock "took the remainder of the seed supplied by Johnny's for testing" by an agricultural and environmental laboratory.  *Id.* ¶ 26.  The laboratory produced a disease diagnostic report "confirming that the pathological testing on the corn seed supplied by Johnny's returned positive results" for three fungal pathogens.  *Id.* ¶ 27.  According to the laboratory, two of these fungi "can cause ear rot."  *Id.* ¶ 28.  A second report revealed that soil samples from the leased property were also contaminated with two of the fungi.  *Id.* ¶ 31.  The Complaint alleges that this "mean[t] the pathogens had infected the soil the corn was grown on."  *Id.* ¶ 31. It further claims, somewhat paradoxically, that

> [t]he Tri L defendants deny that the damages claimed by the plaintiff [Chatham-Kent] were caused by Johnny's Seeds.  The damages claimed were caused by the defective seed supplied by Johnny's Seeds. This is evidenced by the [laboratory reports].

*Id.* ¶ 34.

### 2.    The Policies

From April 1, 2010 to April 1, 2011 Johnny's was insured under a commercial general liability policy issued by OneBeacon.  *Stip.* Attach. 4 (ECF No. 22) (*OneBeacon Policy*).  From April 1, 2011 to April 1, 2012, Johnny's was insured under a commercial general liability policy issued by Massachusetts Bay.  *Stip.* Attach. 5 (ECF No. 22) (*Massachusetts Bay Policy*).  Both policies include the form

"CG 00 01 12 07."  *OneBeacon Policy* at 047; *Massachusetts Bay Policy* at 115.[2]  This

form reads, in part:

1.    Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    . . .

    b.    This insurance applies to "bodily injury and "property damage" only if:

    . . .

        (2)    The "bodily injury" or "property damage" occurs during the policy period; and

        (3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

---

[2]    Although the Stipulated Record is divided into separate Exhibits, the pagination of the Exhibits is continuous throughout.  The Court cites the continuous pagination of the Stipulated Record, not the pagination of individual Exhibits within the Record.

c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

. . .

(2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*OneBeacon Policy* at 047-048; *Massachusetts Bay Policy* at 115. The policies define

"property damage" and "occurrence":

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

17.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*OneBeacon Policy* at 059-060; *Massachusetts Bay Policy* at 128-129.

The coverage of both policies is subject to exclusions for damage to the insured's product:

> 2.    Exclusions
>
> This insurance does not apply to:
>
> . . .
>
>     k.    Damage To Your Product
>
>         "Property damage" to "your product" arising out of it or any part of it.

*OneBeacon Policy* at 047, 050; *Massachusetts Bay Policy* at 116, 119. "Your product" means:

> (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
>     (a)    You;
>
>     (b)    Others trading under your name; or
>
>     (c)    A person or organization whose business or assets you have acquired; and
>
> (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*OneBeacon Policy* at 060; *Massachusetts Bay Policy* at 129. It also includes:

> (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>
> (2)    The providing of or failure to provide warnings or instructions.

*OneBeacon Policy* at 060; *Massachusetts Bay Policy* at 129-130.

Both policies include endorsement CG 22 81 01 96, excluding claims for "property damage" arising out of "[t]he erroneous delivery of seed, which includes . .

. the failure of the seed to germinate." *OneBeacon Policy* at 062; *Massachusetts Bay Policy* at 132.

Finally, both policies include endorsement CG 21 67 12 04, titled "Fungi or Bacteria Exception." *OneBeacon Policy* at 061; *Massachusetts Bay Policy* at 131. This endorsement reads, in relevant part:

A.   The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

   2.   Exclusions

   This insurance does not apply to:

   Fungi Or Bacteria

   a.   "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or "bacteria" on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   b.   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria," by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

C.   The following definition is added to the Definitions Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

*OneBeacon Policy* at 061; *Massachusetts Bay Policy* at 131.

### 3. Record Facts Extrinsic to the Complaint and Cross-Claim

The Stipulated Record in this case also includes certain evidence beyond the Chatham-Kent Complaint, the Cross-Claim, and the relevant insurance policies. On August 16, 2010, Barry Richards with Chatham-Kent emailed Mr. Pocock eleven photos of Chatham-Kent's corn crop. *Stip.* Attach. 10, at 185 (ECF No. 22). Mr. Pocock forwarded this email to Chris Siladi at Johnny's on August 24, 2010, asking "[w]hat is Johnny's stance on renumeration [sic] for terrible germination and growth." *Id.* The email of August 24 also suggests that corn growing in another, adjacent field was healthy, asserting that "[t]his has been about the best growing season we have had in years." *Id.*

On September 24, 2010, Mr. Pocock sent Mr. Siladi an email giving him more information about the failed crop. *Id.* at 186. In this email, Mr. Pocock claimed that the crop "only grew to be in most cases 12 [inches] high and what cobs we did get went right to rot . . . or did not grow at all." *Id.* It also claimed that testing of seed "right out of the bag" showed the presence of the pathogens Aspergillus, Rhizopus, and Penicillium. *Id.* It also claimed that Mr. Pocock had been informed by "the PHD who did this test" that the "pathogens can stay active in the soil via the plant material. If any of the corn germinates next year it must be eradicated. . . . [T]he best way to get rid of this is to spray pesticides to kill the plant." *Id.*

The Stipulated Record also includes a report from A&L Canada Laboratories Inc., dated September 22, 2010, indicating that testing on a "Corn kernel" sample showed the presence of Aspergillus, Rhizopus, and Penicillium. *Stip.* Attach. 11 at

188 (ECF No. 22). This report states that Aspergillus and Penicillium "can cause ear rot" and "Rhizopus is considered a secondary invader." *Id.*

The record contains certain order inquiries and invoices regarding a shipment of what appears to be the "Frisky" seed referenced in the Cross-Claim, to a "Farmer Jacks" in London, Ontario. *Stip.* Attach. 6-8, at 179-83 (ECF No. 22). It is not clear what relationship Farmer Jacks has to Chatham-Kent. Finally, the record contains correspondence between counsel for Chatham-Kent, Johnny's, and cross-claimants Tri L and Mr. Pocock. *Stip.* Attach. 11-12, at 189-93 (ECF No. 22). This correspondence discusses, primarily, the alleged damages in the underlying Chatham-Kent suit.

### 4. The Status of the Ontario Suit

OneBeacon has provided Johnny's with a defense subject to a reservation of rights, including the right to commence a declaratory judgment action to resolve OneBeacon's duty to defend or indemnify Johnny's. *Pl.'s Mot.* 3-4.[3] Massachusetts Bay refused to provide a defense. *Id.* at 4.[4]

## III. DISCUSSION

### A. Position of the Parties

#### 1. The Insurers

The Insurers deny any duty to defend Johnny's. Their theory, at its root, is that even if one of the insurers were obliged to defend Johnny's at the beginning of

---

[3]    This statement is not supported by the stipulated record; it is an assertion of counsel for the Insurers. *See Pl.'s Mot.* 3-4. As Johnny's does not dispute the statement, *see Def.'s Mot.*, the Court deems it established.

[4]    *See supra* note 3.

the suit, that duty evaporates if "developments . . . after the filing of a complaint" show that there is no possibility that any of Johnny's liability could come within the insurance coverage. *Pl.'s Mot.* at 11. The Insurers claim that this could happen "as a result of an amendment to the pleadings" or by establishing, in a declaratory judgment action, uncontroverted facts that show non-coverage. *Id.* at 11-12.

The Insurers argue that there is no possible coverage for Johnny's under the Massachusetts Bay Policy because the seed involved in the suit was sold and planted in the spring of 2010, and the harm was detected in August of that year. *Id.* at 17. The Massachusetts Bay Policy was effective from April 1, 2011 to April 1, 2012. *Id.* They assert that "[t]he fact that an alleged contaminated condition that existed in 2010 may have continued in existence into subsequent policy terms after April 2011 does not implicate potential coverage under those policies with effective dates after April 1, 2011." *Id.*

The Insurers next argue for non-coverage under the OneBeacon Policy. They contend that any claims arising out of the delivery of the wrong seed or the failure of the seed to germinate falls into the exclusion of endorsement CG 22 81 01 96. *Id.* at 18. They further argue that the claimed damage to the crops and to the soil falls into the fungi or bacteria exclusion of endorsement CG 21 67 12 04. *Id.* at 19. This is so, in their view, because the only way Johnny's could be liable for the damage to the crop or to the soil is if the seed became contaminated while in Johnny's possession. *Id.* at 19-20. They also argue that the damages from mediating the

contamination of the soil fall into the "remediation" component of the fungi or bacteria exclusion. *Id.* at 20.

### 2. Johnny's

Johnny's theory of the case revolves around the basic principle that under Maine law the duty to defend depends solely on the allegations in the complaint and the language of the insurance contract. *Def.'s Mot.* at 10. They first attack Massachusetts Bay's contention that its policy does not cover any of the events in the litigation. Johnny's argues that, based solely on the allegations in the Chatham-Kent Complaint, the seed could have been purchased in 2010 and not planted until after April 1, 2011—during the Massachusetts Bay coverage period. *Id.* They concede, however, that the OneBeacon policy is the only policy under which there is any possible coverage for the more specific allegations of the Cross-Claim. *Id.* This is because the dates alleged in the Cross-Claim are only within the OneBeacon coverage period. *Id.*

Johnny's also concedes that any damage "to the seed itself" falls into the "Your Product" exclusion of both policies. *Id.* at 11; *OneBeacon Policy* 047, 050; *Massachusetts Bay Policy* 116, 119. However, Johnny's disputes that the "failure to germinate" exception is applicable. *Def.'s Mot.* at 11. Johnny's argues that neither the Chatham-Kent Complaint nor the Cross-Claim alleges that the seed actually failed to germinate; rather, Johnny's maintains that the Chatham-Kent Complaint and the Tri-L Defendants' Cross-Claim allege that the damage occurred after germination. *Id.* They further argue that even if either pleading claimed there was

a failure to germinate, the pleadings contain other claims independent of a failure to germinate that would still obligate the Insurers to provide a defense. *Id.* at 12.

Next, Johnny's denies that the fungi and bacteria exception relieves either insurer of its duty to defend. *Id.* at 12-15. It argues that neither pleading contends that the contamination by fungi resulted from "contact with, exposure to, existence of, or presence of" fungi "within a building or structure or on the contents of a building or structure." *Id.* at 13. It maintains that Chatham-Kent or the Tri L Defendants could prevail at trial without proving that the contamination occurred in a building. *Id.* Specifically, Johnny's could be liable if the contamination occurred either before or after the seed was stored in a building. *Id.* at 14-15. Because nothing in the pleadings would necessarily exclude coverage, Johnny's urges that the insurers remain under a duty to defend it. *Id.* at 15.

Johnny's finally argues that it is entitled to attorney's fees because Maine's law regarding the duty to defend, requiring defense if any set of facts proved to support the allegations of the complaint could establish liability, was "clear" when OneBeacon and Massachusetts Bay instituted this declaratory judgment action. *Id.* at 15-16. It further argues that there is only one reasonable application of that law to the facts of this case, making attorney's fees an appropriate remedy. *Id.* at 16.

### 3. The Insurers' Opposition

The Insurers reiterate their theory that "[t]he general rule is that an insurer can rely upon uncontroverted extrinsic facts established in a declaratory judgment action in resolving prospectively the duty to defend." *Pl.'s Opp'n* at 2. It urges that documents in the stipulated record show "the fact of when the alleged contaminated

seed was sold and planted, when the land allegedly was contaminated, and that the contaminant was fungi." *Id.* The Insurers also argue that it is proper to consider extrinsic evidence during a declaratory judgment action to determine the duty to defend. *Id.* at 3. They distinguish their position in this declaratory judgment action from rulings by the Maine Supreme Judicial Court that address the duty to defend from the outset of a case. *Id.* at 3-4. Because they view the extrinsic facts in this case as undisputed, they urge that they should be allowed to rely on them to establish non-coverage. *Id.*

Turning to the fungi and bacteria exception, the Insurers reiterate their position that the Chatham-Kent claim is "clearly . . . for losses associated with the fungi contamination and the need to . . . remediate . . . that fungi contamination." *Id.* at 4-5. This, they argue, brings the entire claim within subsection (b) of the exclusion. They next argue that an email from Mr. Pocock to a representative of Johnny's, referring to "terrible germination and growth," establishes that the seeds never germinated, implicating the failure to germinate exception. *Id.* at 5.

The Insurers dispute that Johnny's is entitled to attorney's fees if it should prevail; it views the Maine case law as "sparse, especially with respect to the fact pattern involved in this case." *Id.* at 5-6. It argues that it took its position in this matter in "good faith." *Id.* at 5.

### 4. Johnny's Reply

In reply, Johnny's first disputes that any of the documents relied on by the Insurers are actually referenced by pleadings. *Def.'s Reply* at 1-2. Johnny's

contends that because the pleadings do not formally incorporate those documents, they should not be considered part of the pleadings, as the Insurers contend. *Id.*

Next, Johnny's argues that the documents cited by the Insurers do not necessarily show that the "contaminant" was fungi within the fungi or bacteria exception. *Id.* at 2-3. Its argument turns on causation; fungi are not the only pathogens that could have "contaminated" the seed, and the fact that the tested seeds showed fungal pathogens does not necessarily mean that the seeds that were actually planted had those pathogens. *Id.* Furthermore, Johnny's disputes that the presence of the fungi necessarily "contaminated" any of the seeds at all, or caused the poor growth. *Id.* at 3.

Johnny's next takes aim at the "general rule" put forth by the Insurers that facts beyond the pleadings can be used in a declaratory judgment action to establish no duty to defend. *Id.* at 4-10. It argues that the Insurers' authority supports only a limited use for extrinsic evidence in a declaratory judgment action, characterizing them as narrow exceptions that prove the general rule. *Id.* at 4-5, 10-11. Johnny's also denies that the "general rule" cited by the Insurers is the law in Maine; Maine law, Johnny's contends, strictly forbids the use of facts outside the complaint when evaluating the duty to defend. *Id.* at 5. It vigorously disputes any suggestion that the facts allegedly establishing non-coverage are "undisputed"; it offers its own conflicting interpretation of the documents that the Insurers cite. *Id.* at 5-10. It offers these interpretations to show that it would be inappropriate to relieve the Insurers of the duty to defend based on those facts; resolution of the disputed facts

would require litigating the underlying claim in a mini-trial. *Id.* at 5-10 & n.3. Johnny's closes its attack on the "general rule" allowing extrinsic evidence by denying that there is any distinction between cases litigating the denial of defense from the suit's inception from declaratory judgment actions, as the Insurers suggested. *Id.* at 11-14; *Pl.'s Opp'n* at 2-4.

Addressing the substance of the policy exclusions, Johnny's renews its earlier argument, denying that either the Chatham-Kent Complaint or the Cross-Claim bring the suit into either the fungi or bacteria exclusion or the failure to germinate exclusion. *Def.'s Reply* at 14-17. It vigorously denies that Mr. Pocock's email, referring to "terrible germination," should limit the scope of Chatham-Kent's claims, or of the Cross-Claim, within the policy exclusion. *Id.* at 16. It also points to another email, referenced in the Cross-Claim, from Mr. Saladi to Mr. Pocock expressing surprise at the poor crop; Mr. Saladi, the Cross-Claim, recites, "remember[s] when I spoke to you [Mr. Pocock] in late spring you stated that [the crop] was doing fine." *Id.* at 17; *Cross-Claim* ¶ 29. This suggests to Johnny's, not that the crop failed to germinate, but that it failed after germination. *Def.'s Reply* at 17.

Finally, on the topic of attorney's fees, Johnny's disputes the Insurers' argument that the law in Maine is unclear, either in its substance or its proper application to these facts. *Id.* at 18-19. Johnny's views Maine law as unambiguously favorable to its position, imposing on the Insurers a clear duty to defend. *Id.* at 19.

## B.    Analysis

### 1.    Basic Framework and the Use of Extrinsic Evidence

When evaluating whether an insurer has a duty to provide a defense to its insured, Maine has adopted the so-called "pleading comparison test", *Penney v. Capitol City Transfer*, 1998 ME 44, ¶ 6, 707 A.2d 387, 389.   "We determine the duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy."  *Id.* 1998 ME 44, ¶ 4, 707 A.2d at 388 (quoting *Vigna v. Allstate Ins. Co.*, 686 A.2d 598, 599 (Me. 1996)); *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 9, 36 A.3d 876, 879 ("To determine whether an insurer has a duty to defend, we compare the allegations of the underlying complaint with the coverage provided in the insurance policy").

"[A]n insurer must provide a defense if there is any *potential* that facts ultimately proved could result in coverage."   *Id.* ¶ 10 (emphasis in original).  Furthermore, "[a]ny ambiguity in the policy regarding the insurer's duty to defend is resolved against the insurer, . . . and policy exclusions are construed strictly against the insurer."   *Id.* ¶ 11 (internal citations omitted).   Evidence beyond the pleadings and the insurance contract—"extrinsic evidence"—is normally ignored in the analysis.  *E.g.*, *Penney*, 1998 ME 44, ¶¶ 4-5, 707 A.2d at 388-89.

In theory, Maine law allows an insurer to challenge its duty to defend based on extrinsic facts that the insurer has discovered.  *Worcester Ins. Co. v. Dairyland Ins. Co.*, 555 A.2d 1050, 1053 (Me. 1989); *Commercial Union Ins. Co. v. Royal Ins. Co.*, 658 A.2d 1081, 1083 (Me. 1995).  In *Worcester Insurance Company*, the Law Court considered extrinsic evidence that a gunshot wound by the defendant insured

was caused while loading a vehicle, which brought the injury within a policy exception. 555 A.2d at 1053. The *Worcester* Court stated that "[f]acts known to an insurer by investigation or otherwise which prove noncoverage 'do not relieve the insurer of its obligation to defend, unless the duty is discharged by means of a declaratory judgment action.'" *Id.* at 1053 (quoting J. Appleman, 7C INSURANCE LAW AND PRACTICE § 4683 (1979)); *Commercial Union*, 658 A.2d at 1082-83. In 1995, the Maine Supreme Judicial Court reiterated its statement in *Worcester* that "[e]xtrinsic facts known to the insurer may properly form the basis for a declaratory judgment action." *Commercial Union*, 658 A.2d at 1083. In practice, no Maine case since *Worcester Insurance Company* has actually resolved a duty to defend based even in part on extrinsic evidence. The *Commercial Union* Court concluded that "[t]he facts in this case . . . do not support the exception Royal asks us to create." *Commercial Union*, 658 A.2d at 1083.

By contrast, there is a long string of cases in which the Law Court has reinforced the rule that a duty to defend must be resolved by a pleading comparison test, excluding extrinsic evidence. In 1977, the Law Court wrote that "the pleading test for determination of the duty to defend is based exclusively on the facts as *alleged* rather than on the facts as they actually are." *Amer. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247, 249 (Me. 1977) (emphasis in original). In 1996 the Law Court squarely held that an insurer cannot "ordinarily" avoid the duty to defend with extrinsic evidence of non-coverage: "Even when evidence could conclusively establish the absence of a duty to indemnify, ordinarily

that evidence is irrelevant to the determination of the duty to defend." *N. Sec. Ins. Co. v. Dolley*, 669 A.2d 1320, 1323 (Me. 1996). The Maine Supreme Judicial Court has explained the reason for this rule:

> If we were to look beyond the complaint and engage in proof of actual facts, then the separate declaratory judgment actions . . . would become independent trials of the facts which the [insured] would have to carry on at his expense . . . . We see no reason why the insured, whose insurer is obligated by contract to defend him, should have to try the facts in a suit against his insurer in order to obtain a defense.

*Elliott v. Hanover Ins. Co.*, 1998 ME 138, ¶ 7, 711 A.2d 1310, 1312 (quoting *Travelers Indem. Co. v. Dingwell*, 414 A.2d 220, 227 (Me. 1980)).

In 1996, the *Dolley* Court issued a dictum identifying the non-"ordinar[y]" situations in which extrinsic evidence might be permissible:

> For example, prior criminal convictions for murder, attempted murder and sexual abuse of a child preclude any litigation over the issue of the tortfeasor's intent and therefore there is no duty to defend or indemnify where the policy excludes intentional torts.

*Dolley*, 669 A.2d at 1322 n.3 (Me. 1996) (internal citations and quotations omitted).

A second area where extrinsic evidence might be allowed is where the insurer disputes its duties to defend and indemnify "based on facts that are not related to the question of the insured's liability, such as 'nonpayment of a premium, cancellation of a policy, failure to cooperate or lack of timely notice.'" *North East Ins. Co. v. Young*, 2011 ME 89, ¶ 15, 26 A.3d 794, 799 (quoting *Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 7, 707 A.2d 384, 386); *State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44 ¶ 63, 995 A.2d 651, 670. In *North East*, the Law Court explained this narrow second exception to the rule against extrinsic evidence as allowing such evidence because "the coverage dispute depends entirely on the

relationship between the insurer and the insured, not on facts to be determined in the underlying litigation." *North East*, 2011 ME 89, ¶ 15, 26 A.3d at 799.

Outside these narrowly construed exceptions, the Law Court has consistently reinforced the "policy comparison test" to the exclusion of extrinsic evidence. *Cox v. Commonwealth Land Title Ins. Co.*, 2013 ME 8, ¶ 9, 59 A.3d 1280, 1283 ("Regardless of extrinsic evidence, if the complaint—read in conjunction with the policy—reveals a mere *potential* that the facts may come within the coverage, then the duty to defend exists"); *York Ins. Group v. Lambert*, 1999 ME 173, ¶ 5, 740 A.2d 984, 985 ("Lambert contends that the court erred when it looked beyond the pleadings and considered evidence extrinsic to the complaint. We agree."); *Elliott*, 1998 ME 138, ¶ 7, 711 A.2d at 1312; *Penney*, 1998 ME 44, ¶ 5, 707 A.2d at 388-89; *Garcia*, 1998 ME 38, ¶¶ 5-8, 707 A.2d at 385-86; *Dingwell*, 414 A.2d at 227.

### 2.    Proper Use of the "Extrinsic Evidence" in This Case

The parties have debated the scope of permissible use of "extrinsic evidence" in this case. The Insurers assert that the Court may consider documents "referenced in the pleadings." *Pls.' Opp'n* at 2. Johnny's maintains that merely because a document is mentioned in a pleading does not mean that "its contents can be considered part of the pleading." *Def.'s Reply* at 2.

To resolve this part of the parties' dispute, the Court is not required to slice the fine distinction between "referenced" and "attached" for the purposes of the pleadings comparison test. The problem with considering the documents that the Insurers want considered is that the parties do not agree on what the referenced documents mean. Thus, even if the parties agree that the referenced documents are

what they purport to be, FED. R. EVID. 901(a), the parties do not agree on how the Court should interpret the documents. The resolution of this factual issue must await the underlying trial. For purposes of the pleading comparison test, this Court may not "engage in proof of actual facts" by favoring one interpretation over another in order to resolve the duty to defend. *Elliot*, 1998 ME 138, ¶ 7, 711 A.2d at 1312 (quoting *Dingwell*, 414 A.2d at 227).

### 3. Application of the Comparison Test

#### a. Massachusetts Bay

Johnny's concedes that the Massachusetts Bay policy does not cover the facts alleged in the Cross-Claim. *Def.'s Mot.* at 10. Therefore, the Court need only consider whether the Chatham-Kent Complaint shows "any *potential* that facts ultimately proved could result in coverage." *Mitchell*, 2011 ME 133, ¶ 10, 36 A.3d at 879 (emphasis in original).

The Chatham-Kent Complaint alleges only that in April of 2010 Chatham-Kent purchased seeds from a distributor that acquired the seeds from Johnny's. *Chatham-Kent Complaint* ¶¶ 4-5. It does not specify when Chatham-Kent planted the seeds; it only claims that the seeds were contaminated (with an unidentified contaminant) and that the contamination harmed Chatham-Kent's fields. *Id.* ¶ 6. Chatham-Kent could prevail on its Complaint by proving that it planted the seeds in 2011—during Massachusetts Bay's coverage period—and that the contamination had nothing to do with fungi or bacteria. If this were proven, Johnny's could be exposed to liability for which Massachusetts Bay agreed to provide coverage.

Therefore, Massachusetts Bay has a duty to defend Johnny's against the Chatham-Kent Complaint.

### b. OneBeacon

First, OneBeacon has the duty to defend Johnny's against the Chatham-Kent Complaint for the same reasons Massachusetts Bay has the duty to defend. OneBeacon also has a duty to defend Johnny's against the Cross-Claim.

The Cross-Claim alleges that Tri L purchased certain seeds, identified by brand but not by species, from Johnny's in March and April of 2010, during the OneBeacon coverage period. *Cross-Claim* ¶ 19. It also alleges that Chatham-Kent reported "spoiled corn crops" in August 2010. *Id.* ¶ 23. It further alleges that laboratory testing on "the corn seed supplied by Johnny's" returned positive results for three fungal pathogens. *Id.* ¶ 27. It alleges that soil samples from the stricken fields tested positive for all three pathogens. *Id.* ¶¶ 30, 33. Finally, it alleges that "[t]he seed supplied by Johnny's Seeds caused the crop contamination that are [sic] the subject of the within action. In particular, the [lab reports] confirm that the supplied seed . . . was defective." *Id.* ¶ 44.

The policy exclusion for fungus or bacteria on which OneBeacon primarily relies, Form CG 21 67 12 04, excludes property damage "which would not have occurred, in whole or in part, but for the . . . exposure to, existence of, or presence of, any 'fungi' or 'bacteria' on or within a building or structure, including its contents." *OneBeacon Policy* at 061. However, nothing in the Complaint alleges, suggests, or requires that the fungal contamination of the seed and soil was due to its storage on or within a building or structure, or even that the seed was ever stored in a building

of any sort. Tri L and Mr. Pocock could prevail on their cross-claim by proving that the seed became contaminated with the fungal pathogens before or after it left a structure while still in Johnny's control, or even by proving that Johnny's never stored the seed in a structure.[5] An exclusion from coverage must be construed strictly against the insurer, *Mitchell*, 2011 ME 133, ¶ 11, 36 A.3d 876, and OneBeacon's exclusion is limited to fungus or bacteria attributable to a building or its "contents." Even if portions of the cost of remediating the soil are excluded by the second subsection of the exclusion, the destruction of the crop itself and the alleged damage to the soil would not be excluded; they are not damages for "remediation." In short, the fungus or bacteria exclusion of CG 21 67 12 04 does not obviate OneBeacon's duty to defend because the cross-claimants could prevail against Johnny's on facts that implicate at least some coverage.

The failure to germinate exclusion, form CG 22 81 01 96, also fails to defeat the duty to defend. The cross-claimants make no allegations about whether the seed germinated. *See Cross-Claim*. Nothing about their legal theories requires a failure to germinate; indeed, paragraph 23 of the Cross-Claim alleges that Chatham-Kent discovered the spoiled crops on August 16, 2010, some four months after Johnny's shipped the last batch of seed. "Spoilage" of a crop does not require

---

[5] For instance, the cross-claimants might prove that the seed became contaminated while Johnny's was harvesting it, before it entered a structure. They might also prove that Johnny's stored the seed outside for some period of time, after removing it from a structure, during which period it became contaminated with the pathogens. In either case, the harm would not fall into the policy exclusion.

or suggest failure to germinate.  Nothing about the Cross-Claim brings it within the exclusion of CG 22 81 01 96, and so OneBeacon still has a duty to defend Johnny's.

### 4. Attorney's Fees

Having concluded that OneBeacon and Massachusetts Bay have a duty to defend Johnny's against the Chatham-Kent Complaint and the Cross-Claim, the Court now considers whether Johnny's should be awarded its attorney's fees in defending this declaratory judgment action.  The Insurers are correct that the "American Rule" at common law "generally prohibits taxing the losing party in litigation with a successful opponent's attorney fees." *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1354 (Me. 1996).  Absent statutory authority, a contractual provision, or a limited number of common law authorizations, each party must pay its own attorney regardless of the outcome of the litigation.  *Id.*

Maine, however, has carved out an exception to the American Rule in disputes between insurers and insureds over the duty to defend.  *Id.*  In the words of the Maine Law Court, "the special relationship between insurer and insured entitles an insured in certain circumstances to an award of attorney fees incurred in establishing the insurer's duty to defend."  *Id.*  In *Union Mutual Fire Insurance Co. v. Inhabitants of the Town of Topsham*, 441 A.2d 1012 (Me. 1982), the Maine Supreme Judicial Court explained that "[b]ecause the liability insurer's duty of defense is so extensive and the burden on the insured of a breach of that duty is likely to be so heavy, we conclude that the insurer should not enjoy the usual freedom to litigate without concern about the possibility of having to pay the other

party's attorneys' fees." *Id.* at 1019. The Law Court announced the standard to determine whether to award of attorney's fees to the insured:

> When the duty to defend is clear from the policy and the pleadings, so that the insurer's commencement of the declaratory judgment action must be attributed to a refusal in bad faith to honor its obligation under the policy, the insured should be entitled to his reasonable attorneys' fees in defending the declaratory judgment action as an element of damages for the insurer's breach of its contract obligation.

*Id.*[6] The Maine Supreme Judicial Court later explained that "[t]o determine whether a duty to defend is 'clear' for purposes of awarding attorney fees, a court must evaluate state law regarding an insurer's duty to defend as it existed at the time the insurer initiated the declaratory judgment action." *Me. Mut. Fire Ins. Co. v. Gervais*, 1999 ME 134, ¶ 6, 745 A.2d 360, 362.

Here, the Insurers argued that the Court could consider "extrinsic facts demonstrated by documents in the record" to determine whether they owed a duty to defend. *Pls.' Mot.* at 13-14. The Insurers went on to argue:

> To the extent the Plaintiffs rely on those extrinsic facts, the facts are not in dispute, do not necessitate a mini trial or duplicate trial, and are not contested facts in the underlying case yet to be resolved.

*Id.* at 14. Even if the Insurers were arguably correct that the Court could consider documents referenced in the Complaint, it was or should have been clear that the meaning of those documents was in dispute. Therefore, to the extent the Insurers'

---

[6]   After *Union Mutual*, the Maine Legislature enacted a provision that requires insurers to pay the attorneys' fees of an insured if the insured prevails in an action to enforce the duty to defend. 24-A M.R.S. § 2436-B.   However, the statute applies only to "a natural person" and excludes corporations. § 2436-B(1); *Foremost Ins. Co. v. Levesque*, 2007 ME 96, ¶ 7, 926 A.2d 1185, 1188.

declaratory judgment action was premised on an assumption that facts obviously in dispute were not in dispute, the duty to defend was clear.

Next, assuming that the Insurers should have known that the Court would not consider contested facts that were intertwined with the issues in underlying action, the next question is whether the duty to defend should have been clear. Here, the Insurers conceded that the claim fell within the grant of coverage and therefore the Insurers bore the burden to establish that coverage was excluded. *Id.* at 14. Massachusetts Bay maintained that its policy could not have covered the claim because "the inception date of the earliest Massachusetts Bay policy is after the sale and planting of the alleged contaminated seeds, the failed crop in the summer of 2010 and the alleged contamination of the farm land in 2010." *Id.* But, as the Court has pointed out, the only date in the Complaint is the date the seeds were sold:

> The Plaintiff states that in or about the month of April 2010 the Plaintiff, Chatham-Kent Organic Epi-Centre Inc., purchased various organic agricultural seeds from the Defendants, Tri L Natural Organic Farms Inc., Natural Organic Farms Inc. and Larry Pocock, in order to plant organic agricultural crops on their lands.

*Compl.* ¶ 6. Otherwise, there are no dates at all alleged in the Complaint. Specifically, the Complaint does not allege that Plaintiff planted and harvested the allegedly defective crop in 2010. Accordingly, there is no basis to conclude on the face of the allegations in the Complaint that the Plaintiff planted or harvested the allegedly defective crop within or outside Massachusetts Bay's policy period. To infuse dates into the Complaint, the Court would have to travel outside its allegations and considered documents, the significance of which is in dispute. Thus,

the Court concludes that Massachusetts Bay was clearly wrong in its contention that its coverage was necessarily outside the dates in an underlying complaint that was substantially devoid of dates.

Finally both Insurers asserted that coverage was excluded under both commercial general liability policies. However, the exclusions upon which the Insurers rely depend on their ability to prove facts that are not alleged in the Complaint and the Cross-Claim. Accordingly, the Court views the Insurers' contention that they owed no duty to defend based on matters extrinsic to the Complaint and Cross-Claim to have been clearly wrong.

Under *Gibbons*, because the duty to defend was clear from a comparison of the insurance policy and the Complaint and Cross-claim, Johnny's is entitled to its attorney's fees and costs in defending this declaratory judgment action paid by the Insurers. *Barrett Paving Materials, Inc. v. Continental Ins. Co.*, 488 F.3d 59, 65 (1st Cir. 2007); *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 831 F. Supp. 2d 367, 372-76 (D. Me. 2011).

## IV.    CONCLUSION

The Court DECLARES that both Plaintiffs have a duty to defend the Defendant against the Chatham-Kent Complaint and that OneBeacon has a duty to defend the Defendant against the Cross-Claim. The Court further ORDERS the Defendant to file a motion for attorney's fees in accordance with Federal Rule of Civil Procedure 54(d)(2) and District of Maine Local Rule 54.2.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 17th day of April, 2014